# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| VDATA, LLC<br>and<br>VCODE HOLDINGS, INC., | Civil No.  06-cv-1701<br>(JNE/SRN) |
| **Plaintiffs,** | **REPORT AND<br>RECOMMENDATION** |
| v. | |
| AETNA, INC., PNY TECHNOLOGIES, INC.,<br>MERCHANT'S CREDIT GUIDE CO.,<br>THE ALLSTATE CORPORATION,<br>and<br>AMERICAN HERITAGE LIFE INSURANCE CO., | |
| **Defendants.** | |

---

Edward E. Casto, Jr., Esq., Jonathan T. Suder, Esq., Kurt J. Niederluecke, Esq., on behalf of Plaintiffs

William F. Stute, Esq. on behalf of Defendant Aetna, Inc.

Roger D. Taylor, William F. Forsyth on behalf of Defendant PNY Technologies, Inc.

Eric J. Strobel, Esq., on behalf of Defendant Merchant's Credit Guide Co.

---

SUSAN RICHARD NELSON, United States Magistrate Judge

The above-captioned matter comes before the undersigned United States Magistrate Judge on

Defendant Merchant's Credit Guide Co.'s ("Merchant's") Motion to Stay, Consolidate, or Dismiss

(Doc. No. 22), Defendant Aetna, Inc.'s ("Aetna") Motion to Dismiss (Doc. No. 42), Defendant

Aetna's Motion for Sanctions (Doc. No. 55), Plaintiffs' Motion to Exclude Exhibits (Doc. No. 59), and

1

Plaintiffs' Motion to Strike (Doc. No. 71.)  This matter has been referred to the undersigned for

resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

## I.      BACKGROUND

On May 5, 2006, Plaintiff VData, LLC ("VData") filed this action against Defendants Aetna,

PNY Technologies, Inc. ("PNY"), Merchant's, The Allstate Corporation ("Allstate"), and American

Heritage Life Insurance Co., alleging patent infringement in violation of 35 U.S.C. § 271.  (Doc. No.

24, Ex. A.)  In its Complaint, VData asserts that Defendants have infringed United States Patent No.

5,612,524 ("the '524 patent") of which VData is the exclusive rightful holder.  (Id.)  The '524 patent,

issued by the United States Patent and Trademark Office ("PTO") on March 18, 1997, describes an

"Identification Symbol System and Method with Orientation Mechanism."  (Id.)  VData claims that

Defendants have infringed the '524 patent literally, or under the doctrine of equivalents, by making,

using, selling, or offering for sale, articles that infringe the '524 patent.  (Id.)  In addition, VData asserts

that the Defendants will continue to infringe the '524 patent causing it immediate and irreparable harm.

(Id.)  The Complaint alleges that Defendants' infringement was willful and seeks treble monetary

damages and a permanent injunction.  (Id.)

On May 17, 2006, VData filed its First Amended Complaint.  (Doc. No. 24, Ex. C.)  A new

Plaintiff, VCode Holdings, Inc. ("VCode") joined in the action and VData and VCode assert that

Defendants willfully infringed both the '524 patent and U.S. Patent No. 4,924,078 ("the '078 patent")

of which Plaintiffs "together own all right, title and interest."  (Id.)  The '078 patent issued on May 8,

1990, and like the '524 patent, covers an "Identification Symbol System and Method." (Id.)  The First

Amended Complaint likewise alleges that Defendants infringed the '524 and '078 patent literally, or

under the doctrine of equivalents, by making, using, selling or offering for sale articles and services that infringe claims in the '524 and '078 patents. In addition, it also alleges willful infringement and demands treble damages as well as a permanent injunction. (Id.) The Plaintiffs have not moved for a preliminary injunction.

In response to the Amended Complaint, Defendants[1] filed a series of motions. On July 14, 2006, Merchant's filed its Motion to Stay, Consolidate, or Dismiss. (Doc. No. 22.) On July 30, 2006 and August 28, 2006, respectively, Aetna filed its Motion to Dismiss and Motion for Sanctions. (Doc. Nos. 42 and 55.) Plaintiffs have objected to the exhibits filed in support of Aetna's Motion to Dismiss and on August 29, 2006 and August 31, 2006, moved to strike them from the record. (Doc. Nos. 59 and 71.)

The current action is not the only ongoing litigation pertaining to the '524 and '078 patents. On March 13, 2006, prior to the Plaintiffs' filing of the current lawsuit, Cognex Corporation ("Cognex") sued Plaintiffs, and others, in a declaratory judgment action alleging that the '524 and '078 patents were invalid and unenforceable ("the Cognex litigation"). (Doc. No. 24, Ex. D.) Cognex is a supplier of machine vision systems, including data matrix symbol readers, which enable the automation of manufacturing processes where vision is required. (Id.)

In addition to the litigation surrounding the '524 patent, a request for reexamination of the '524 patent was filed with the PTO on March 22, 2006. (Doc. No. 24, Ex. F.) The request sought

---

[1]Defendants Allstate and American Heritage Life Insurance Co. were dismissed from this case by Plaintiffs pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure. (Doc. No. 96-1.) Only Defendants Aetna, PNY and Merchant's remain as defendants in this case.

reexamination of claims 1-5, 8-9, 15, 19-32 and argued that each was either anticipated by, or obvious in light of, prior art.  (Id.)  On April 6, 2006, the PTO granted the request for reexamination.

Finally, on September 5, 2006, Defendant PNY filed a request for reexamination of the '078 patent with the PTO.  (Doc. No. 82.)  The PTO has yet to respond to that request.

## II.    MERCHANT'S MOTION TO STAY, CONSOLIDATE, OR DISMISS

### A.    Parties' Arguments

Merchant's has moved the Court to stay the proceedings pending the outcome of the Cognex litigation and/or the PTO reexamination of the '524 patent and '078 patents[2].  In the alternative, Merchant's seeks either an order consolidating this case with the Cognex litigation or an order dismissing it in its entirety.  (Id. at ¶¶ 7, 20, 17.)  Aetna joins Merchant's motion to stay and its alternative motion to dismiss.  (Doc. No. 86.)

Merchant's argues that a stay of the proceedings pending the outcome of the Cognex litigation and/or the PTO's reexamination of '524 and '078 patents is appropriate because: 1) the stay will not cause undue prejudice or present a clear tactical disadvantage to Plaintiffs; 2) the stay will likely simplify the issues; and 3) the case is at an early procedural posture, no discovery has been taken nor has a trial date been set.  (Def. Merchant's Mem. Supp. Mot. Stay at ¶ 9.)  Merchant's argues that Plaintiffs will not be prejudiced because it is likely that the validity or enforceability issues related to these patents will be resolved in the Cognex litigation or the PTO's reexamination process.  (Id. at ¶ 10.)  Merchant's

---

[2]Merchant's submitted its brief before PNY submitted its request for the reexamination of the '078 patent.  However, at the motion hearing, Merchant's orally moved to extend the stay it seeks to include the '078 patent.

maintains that staying the proceedings pending the outcome of the <u>Cognex</u> litigation and/or the PTO's

reexamination process will simplify the issues because the Court in the <u>Cognex</u> litigation could declare

the '524 patent invalid or unenforceable, and the PTO reexamination could find the '524 and '078

patents invalid.  (Def. Merchant's Mem. Supp. Mot. Stay at ¶ 9.) at ¶¶ 10-11, 14-15.)  Conversely,

Merchant's notes that if the PTO upholds the validity of the patents at issue, the Plaintiffs' position

would become stronger.  (<u>Id.</u> at ¶ 15.)  With either outcome, Merchant's argues, the remaining issues

would become "infinitely simplified."  (<u>Id.</u> at ¶¶ 11.)  Finally, the stay is particularly appropriate,

Merchant's contends, because the litigation has yet to emerge from its preliminary stage, the parties

have not yet taken discovery and the Court has yet to schedule a trial.  (<u>Id.</u> at ¶12.)

In the alternative, Merchant's asks the Court to dismiss this case under: 1) the abstention

doctrine established in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 814

(1976); 2) Federal Rule of Civil Procedure 12(b)(1); or 3) Federal Rule of Civil Procedure 12(b)(6).

(<u>Id.</u> at ¶¶ 17-19.)  In its second alternative motion, Merchant's requests that, if the Court neither stays

these proceedings nor grants its motion to dismiss, the Court then consolidate this case with the <u>Cognex</u>

litigation because the two proceedings have common questions of fact and law and the consolidation

would save judicial and litigant resources.  (<u>Id.</u> at ¶¶ 20-23.)  Finally, Merchant's urges the Court to

use its discretion under District of Minnesota Local Rule 1.3 to sanction Plaintiffs for not identifying the

<u>Cognex</u> litigation, or the PTO proceedings, on their civil cover sheet as required by District of

Minnesota Local Rule 3.1.  Merchant's argues that Plaintiffs' omission deprived the Court of "the

knowledge necessary to dismiss, stay, or consolidate the action" and therefore, the Court should take

one of these three courses of action as a sanction.  (<u>Id.</u> at ¶¶ 24-28.)  Merchant's does not seek a

5

monetary sanction.  (<u>Id.</u> at ¶ 28.)

Plaintiffs respond that a stay pending the outcome of the <u>Cognex</u> litigation and/or the PTO's reexamination of the '524 and '078 patents will cause them undue prejudice and fail to simplify the issues in the case.  (Pls.' Resp. Opp. Def. Merchant's Mot. Stay at 4, 8.)  First, Plaintiffs argue that a stay will cause them undue prejudice because: 1) it will enable Defendants to "continue their infringing activities unfettered"; 2) it will provide Defendants with multiple opportunities to attack the '524 or '078 patents ("a second (or third) bite at the apple"); and 3) the impending expiration of the patents at issue in November, 2007 may place the PTO in an "all or nothing" situation in which it must validate or invalidate each patent as a whole, given that the PTO may not amend a patent's claims after its expiration.  (<u>Id.</u> at 8-9.)

Second, Plaintiffs contend that a stay would fail to simplify the issues in this case because: 1) neither the <u>Cognex</u> litigation nor the PTO's reexamination of the '524 and '078 patents will provide the Defendants with a basis for issue preclusion; 2) the PTO reexamination process is unlikely to invalidate the '524 patent in its entirety and the PTO has not yet approved reexamination of the '078 patent; and 3) the issues in this case are broader than the validity of the '524 and '078 patents.  Because the <u>Cognex</u> litigation and the PTO reexamination proceedings will not have a preclusive effect on Merchant's, Plaintiffs argue that Merchant's will remain free to assert that the '524 and '078 patents are invalid because they are anticipated by the same prior art references as form the basis for the requests for PTO reexamination.  In addition, Plaintiffs assert that because the reexamination request fails to raise new prior art, the '524 and '078 patents will likely survive reexamination.  (<u>Id.</u> at 5-6.)  Finally, Plaintiffs maintain that, in addition to invalidity, this case involves issues of infringement,

willfulness, damages, and enforceability and that a stay pending either the <u>Cognex</u> litigation or the PTO reexamination process would resolve none of these issues.  (<u>Id.</u> at 6.)  Therefore, Plaintiffs assert that a stay will not promote judicial economy.  (Pls.' Resp. Opp. Def. Merchant's Mot. Stay at 6-7.)  If the Court is inclined to grant a stay, however, Plaintiffs move the Court for a partial stay of the proceedings only as they pertain to the '524 patent.  (<u>Id.</u> at 11.)

Plaintiffs argue that the Court should deny Merchant's alternative motion to dismiss because: 1) the abstention doctrine created in <u>Colorado River Water Conservation District</u>, 424 U.S. at 814, is inapposite as it involved a federal court's abstention in the face of a concurrent state court action which, unlike the <u>Cognex</u> litigation, would involve all the issues in the case; 2) under 28 U.S.C. § 1338, the Court has exclusive subject matter jurisdiction over this patent suit; and 3) Plaintiffs' Amended Complaint makes sufficient factual allegations to survive a Rule 12(b)(6) motion to dismiss.  (<u>Id.</u> at 9-10.)  In addition, Plaintiffs maintain that Defendants' alternative motion to consolidate should be denied because the <u>Cognex</u> litigation involves different products, a different infringement analysis and non-patent claims such as defamation and violation of the Minnesota Uniform Deceptive Trade Practices Act, all of which could complicate the issues, protract discovery, and confuse the jury.  (<u>Id.</u> at ¶¶ 4-9.)  Finally, Plaintiffs maintain that Merchant's motion for sanctions must fail because: 1) the cover sheet required by D.Minn. LR 3.1 is purely administrative; 2) Merchant's has requested inappropriate relief for a violation of D.Minn LR 3.1; 3) the <u>Cognex</u> litigation is not a related case within the meaning of D.Minn LR 3.1; 4) D.Minn LR 3.1 does not require a listing of a PTO proceeding because it is not a judicial proceeding; and 5) Merchant's has not suffered prejudice as a result of the omission.  (<u>Id.</u> at 10-12.)

In addition to the Plaintiffs' arguments against Merchant's alternative motion to consolidate, non-party <u>Cognex</u> also submitted a memorandum in opposition to the motion.  (Doc. No. 89-1.)

**B.      Discussion**

This Court recommends that this case be stayed pending the PTO's reexamination of the '524 patent, and if it is approved, the reexamination of the '078 patent, because the stay: 1) would not unduly prejudice or create a clear tactical disadvantage for Plaintiffs; and 2) would potentially simplify the issues in the case and significantly promote judicial economy.  In addition, as discovery has not begun and a trial date has not yet been set, a stay is particularly appropriate.

A district court possesses the power to stay proceedings incidental to the power inherent in every court to control its docket.  <u>Lunde v. Helms</u>, 898 F.2d 1343, 1345 (8th Cir. 1990) (*citing Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)).  Therefore, the decision to grant or deny a stay pending the outcome of a PTO proceeding rests with the sound discretion of the Court. <u>ASCII Corp. v. STD Entertainment USA, Inc.</u>, 844 F. Supp.1378, 1380 (N.D. Cal. 1994), <u>see</u> <u>also</u>, <u>Grayling Ind., Inc., et al. v. GPAC, Inc.</u>, No. 1:89-cv-451-ODE, 1991 U.S. Dist. LEXIS 16750, at *3 (N.D. Ga. Mar. 25, 1991) ("The decision whether to stay proceedings in district court while a reexamination by the PTO takes place. . . has been recognized to be within the district court's inherent discretionary power.").  Courts have adopted a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings.  <u>ACSII Corp.</u>, 844 F.Supp. at 1381.

In determining whether a stay is appropriate, courts consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question; and (3) whether discovery is complete and whether a

trial date has been set.  Xerox Corp. v. 3Com Corp., 69 F. Supp.2d 404, 406 (W.D.N.Y. 1999) (citations omitted).  The court must weigh the competing interests presented by the facts and balance the hardships to the parties resulting from granting or denying the stay as well as consider "the orderly course of justice measured in terms of simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  Gladish v. Tyco Toys, Inc., No. Civ. S-92-1666, 1993 U.S. Dist. LEXIS 20211, at **2-3 (E.D. Cal. Sept. 16, 1993) (citations omitted).

The Court finds that all three factors support ordering a stay of the entire case.

### 1.     A Stay Will Not Cause Undue Prejudice or a Clear Tactical Disadvantage to Plaintiffs

The Court finds that a stay of the entire proceeding, pending the reexamination of the '524 and '078 patents, would not cause Plaintiffs undue prejudice nor would it place Plaintiffs at a clear tactical disadvantage because monetary damages provide Plaintiffs with an adequate remedy.

In considering the undue prejudice or tactical disadvantage that might result from a stay, courts have taken the position that if other remedies are available, undue prejudice is sufficiently ameliorated. For example, the court in Softview Computer Prods. Corp., et. al v. Haworth, Inc., No. 97 Civ. 8815, 2000 U.S. Dist. LEXIS 11274, at **10-11 (S.D.N.Y. 2000 Aug. 10, 2000), noted that any prejudice to the party opposing the stay could be ultimately remedied through an injunction and money damages.

Plaintiffs have failed to explain why monetary damages and a permanent injunction would not adequately compensate them for the harm they have suffered.  Plaintiffs argue that a stay would enable Merchant's to "continue their infringing activities unfettered," but Plaintiffs have not sought a preliminary injunction.  Moreover, Plaintiffs have stated an intention to seek monetary damages for up to six years

9

of past infringement.  In addition, as Plaintiffs will suffer no new damages after the '524 and '078

patents expire in November 2007, a stay would not unduly protract the period during which Plaintiffs

suffer harm.

Plaintiffs respond that a stay, pending the PTO's reexamination of the '524 and '078 patents,

provides Defendants with "a second ... bite at the apple."  This argument is unavailing as courts

routinely grant stays of litigation pending the PTO's reexamination decision.  CNS Inc. v. Silver Labs,

No. Civ-04-968, 2004 U.S. Dist. LEXIS 28960, at *3 (D. Minn. Nov. 29, 2004).  Therefore, this

type of prejudice cannot meet the criteria established in Xerox, 69 F. Supp.2d at 406.  In creating the

reexamination process, Congress countenanced a scheme in which a patent's validity may come under

attack in both a courtroom and the PTO.  Ethicon v. Quigg, 849 F.2d 1422, 1426-1427 (Fed. Cir.

1988).

## 2. A Stay Will Potentially Simplify the Issues and Promote Judicial Economy

The Court finds that a stay of the entire proceedings, pending a reexamination of the '524 and

'078 patents, would likely simplify issues pertaining to the validity of the patents at issue, and/or the

infringement thereof, because the PTO may find the '524 and '078 patents invalid, or narrow their

claims.  The former result would potentially eliminate this case and the latter would likely result in a

clarification of the infringement issues for trial.

A number of courts have noted the advantages to staying litigation pending reexamination

proceedings before the PTO, including the following:

1. All prior art presented to the court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the court.

Emhart Industries, Inc. v. Sankyo Seiki Mfg. Co., Ltd., No. 85 C 7565, 1987 U.S. Dist. LEXIS 15033, *3-4 (E.D. Ill. Jan. 30, 1987). An obvious benefit to a stay in terms of judicial economy is that the PTO could potentially eliminate trial on the issue of infringement. See Robert H. Harris Co. v. Metal Mfg. Co., Civ. No. J-C-90-179, 1991 U.S. Dist. LEXIS 16086, at *8 (E.D. Ark. Jun. 21, 1991). As courts have noted, if the reexamination proceeding invalidates or narrows a claim or claims, issues at trial will be simplified. Softview Computer Prods. Corp., et. al, 2000 U.S. Dist. LEXIS 11274 at *9; Grayling Ind., 1991 U.S. Dist. LEXIS 16750 at *6 (stating that if the patents are declared unpatentable, the action would be moot, whereas if the patents are deemed valid by the PTO, such a finding would be admissible and carries a presumption of validity.) Courts may benefit from the PTO's expertise if claims are reaffirmed: "if the reexamination proceeding reaffirms all the claims as issued, the Court will then have the benefit of the PTO's expert analysis of the prior art that allegedly invalidates or limits the claims." Softview Computer Prods. Corp., et. al, 2000 U.S. Dist. LEXIS 11274 at **9-10; see also, Hewlett-Packard Co. v. Acuson Corp., No. C-93-0808 MHP, 1993 U.S. Dist. LEXIS 6449, at *12 (N.D. Cal. May 6, 1993) (finding that the possible hardship for the party opposing stay "is outweighed by the orderly cause of justice measured in terms of the simplification of

issues, proof, and questions of law which are expected to result from the stay."). Particularly in complex cases involving multiple patents and related patents, courts have found that a stay would result in simplification. Pegasus Development Corp., et al. v. Directv, Inc., et. al, No. 00-1020-GMS, 2003 U.S. Dist. LEXIS 8052, at *6 (D. Del. May 14, 2003).

Not only does a stay have the potential to narrow or dispatch claims altogether, it also may minimize the attendant financial costs of litigation to the parties and the courts. As the court in Softview Computer Prods. Corp., et. al stated in its decision granting a stay, "although the denial of a stay can have no effect whatsoever on past events, the grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims." Softview Computer Prods. Corp., et. al, 2000 U.S. Dist. LEXIS 11274 at *9.

Even in cases in which the patent-in-suit is merely related to patents in reexamination, courts have found stays beneficial for purposes of narrowing issues relating to the claims and streamlining discovery. See Alloc, Inc. v. Unilin Decor N.V., 03-253-GMS, 2003 U.S. Dist. LEXIS 11917, at *7 (D. Del. July 11, 2003). The Alloc case involved a motion to stay the litigation of the '579 patent pending the completion of both the '621 reexamination proceedings and the United States Federal Circuit's decision on three other related patents. 2003 U.S. Dist. LEXIS 11917 at **1-3. The court held that there was a sufficient correlation among all of the patents, making a stay appropriate. Id. at *7.

In this case, it is clear that this factor -- simplifying the issues and trial in the case -- weighs heavily in favor of granting a stay. First, the reexamination challenges to both the '524 and '078 patents are based on prior art. Therefore, if the court stays the proceedings pending the PTO's reexamination

decision, "[a]ll prior art presented to the court will have been first considered by the PTO, with its particular expertise" and "many discovery problems relating to prior art can be alleviated by the PTO examination". Emhart, 1987 U.S. Dist. LEXIS 15033 at *3. In addition, "the record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation." Id. at **3-4. If the PTO invalidates the '524 or '078 patents, or limits their claims so severely that they are effectively invalidated, this suit, which centers on the infringement thereof, will likely be dismissed. However, even if the PTO only narrows some of the claims, "issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination." Id. at *4. Given that this suit involves infringement claims, the outcome of the reexamination may encourage a settlement without the further use of the court. Id. at *4. Therefore a stay would likely result in a cost reduction for both parties and the court. Id. at *4. These benefits outweigh the PTO reexamination's lack of a preclusive effect and accrue whether or not the PTO invalidates the '524 patent. The issues present in this case are broader than invalidity, but the possible narrowing of the infringement and enforceability issues represent a substantial benefit.

Finally, the Court recognizes that the PTO has not yet approved the reexamination of the '078 patent, however, because these patents are related, the PTO's reexamination of the '524 patent alone will likely narrow issues relating to the claims and streamline discovery. Therefore, this factor weighs strongly in favor of staying the entire case pending the reexamination of only the '524 patent, even if the PTO does not grant reexamination of the '078 patent.

### 3.    Status of Discovery

The third factor which courts consider in evaluating whether to stay a case pending a PTO

reexamination is the stage of litigation, namely, whether discovery is complete or whether much remains to be done.  Xerox, 69 F. Supp.2d at 406.  As discovery has not yet begun in the present case, the Court finds that a stay would likely conserve discovery resources because it would potentially enable the parties to focus their discovery efforts on a narrower set of issues.  Therefore, a stay is particularly appropriate.

Courts granting stays during the early phases of discovery have sought to avoid the unnecessary expenditure of resources.  As one court has noted:

> Discovery is not yet completed, extremely voluminous summary judgment motions have been served, the Markman hearing has not yet been held and the Pretrial Order has not yet been prepared.  It would be a serious waste of both the parties' and the Court's resources if the Markman and summary judgment proceedings went forward and the claims were subsequently declared invalid or were amended as a result of the reexamination proceeding.

Softview Computer Prods. Corp., et. al, 2000 U.S. Dist. LEXIS 11274, at **8-9.  Therefore, "[a] stay pending reexamination is routinely ordered, particularly where discovery has not progressed past the early stages."  CNS Inc. v. Silver Labs, 2004 U.S. Dist. LEXIS 28960 at *3.  In granting a stay after the parties had conducted some written discovery, the CNS court noted that, "the bulk of the discovery will be sought or pursued after, and with the benefit of, the reexamination."  Id.  In contrast, courts which have denied stays pending reexamination proceedings have generally done so where the request for reexamination came late in the litigation, after extensive discovery or trial preparation. Gladish, 1993 U.S. Dist. LEXIS 20211 at **3-4 (citations omitted).

As it is undisputed that neither party has taken any discovery in this case and that a trial date has not been set, the stay's benefit to the discovery process is maximized.  Therefore, a stay is

14

particularly appropriate.

###    C.    CONCLUSION

The Court is persuaded that a stay will not prejudice any of the parties, will simplify the issues, and will help promote focused and efficient discovery.  As the Court recommends that Merchant's motion for a stay pending reexamination of the '524 and '078 patents be granted, the Court need not address Merchant's alternative motions to consolidate or dismiss.

Plaintiffs have requested that the '078 patent litigation proceed if the Court grants a stay with respect to the '524 patent reexamination, but have not articulated any reason why separate trials would promote judicial economy.  The Court finds that a complete stay pending the outcome of the PTO proceedings will advance the goal of simplifying the issues and promoting judicial economy.

Finally, the Court believes that sanctions in this case are not appropriate even if Plaintiffs may have technically violated D.Minn. LR 3.1, because no harm to Defendants has resulted. Therefore the Court will not exercise its discretion to impose sanctions on Plaintiffs.

## III.    AETNA'S MOTION TO DISMISS

Aetna moves for the dismissal of Plaintiffs' Amended Complaint on three grounds.  First, Aetna argues that the Court should dismiss Plaintiffs' Amended Complaint under Rule 12(b)(2), arguing that the Court lacks personal jurisdiction over Aetna.  Second, Aetna contends that the Court should dismiss Plaintiffs' Amended Complaint under Rules 12(b)(4) and 12(b)(5) alleging that they were served with a defective summons.  Third, Aetna maintains that the Court should dismiss Plaintiffs' suit under Rule 12(b)(6), as Plaintiffs have failed to state a plausible infringement claim against Aetna and because Plaintiffs' claims are barred by the doctrine of collateral estoppel.  Finally, if the Court denies

Aetna's Motion to Dismiss, Aetna moves, in the alternative, pursuant to Federal Rule of Civil

Procedure 19(a), for the Court to join third party Source One Direct, Inc. ("Source One") as a

necessary and indispensable party on the grounds that Aetna's possible infringement stems from its

contractual relationship with Source One.

### A.      Personal Jurisdiction over Aetna

#### 1.      Background

Aetna argues that the Court should dismiss this suit against it for lack of personal jurisdiction

because: 1) Minn. Stat. § 543.19, which confers jurisdiction over foreign corporations, will not confer

jurisdiction over Aetna directly; and 2) although Minn. Stat. § 543.19 may confer jurisdiction over

Aetna's subsidiaries, under Kling v. ADC Group Long-Term Disability Plan, No. CV-04-2626-2004

U.S. Dist. LEXIS 21045, at *5 (D.Minn. Oct. 14, 2004), the activities of Aetna's subsidiaries are

insufficient to permit the Court to exercise personal jurisdiction over Aetna.

Aetna contends that its business activities will not satisfy Minn. Stat. § 543.19 subd. 1 (a)-(d)

because: 1) it "does not own, use, or possess any real or personal property in Minnesota"; 2) "[i]t does

not transact any business in Minnesota"; 3) it has not committed any act inside Minnesota causing injury

or property damage; and 4) it has not committed any act outside Minnesota causing injury or property

damage inside Minnesota.  (Id. at 7.)  Aetna characterizes itself "not [as] an operating company that

conducts business in Minnesota," but rather as "a holding company of subsidiary companies which

provides employee welfare benefits" and whose "business occurs principally in the states of

Connecticut and Pennsylvania." (Def. Aetna's Mem. Supp. Mot. Dismiss at 5.)

Although Aetna denies engaging in direct contacts with the state of Minnesota, Aetna does not

refute that one of its subsidiaries conducts business in the state.  Nonetheless, Aetna contends that "in

order for personal jurisdiction over a parent corporation to be based on the activities of a subsidiary,

there must be 'a close interconnection between the parent and the subsidiary ... such as the

consolidation of corporate image and operations.'" (Id. at 4. *citing* <u>Kling</u>, 2004 U.S. Dist. LEXIS

21045, at *5 (internal citations omitted).)  Aetna asserts that this standard has not been met as Aetna

and its subsidiaries are "independent corporate entities."  (Id. *citing* <u>Kling</u>, 2004 U.S. Dist. LEXIS

21045, at *5)  Therefore, Aetna argues that, like the <u>Kling</u> court, this Court should dismiss this case for

lack of personal jurisdiction.  (Id.)

      Plaintiffs respond that the Court should deny Aetna's motion because they have made the

necessary prima facie showing of general jurisdiction - that Aetna has systematic and continuous

contacts with the state of Minnesota, as evidenced by the contents of its <u>www.aetna.com</u> web site.

(Pls.' Resp. Opp. Def. Aetna's Mot. Dismiss at 4-5.)  Plaintiffs have produced copies of print outs of

numerous web pages hosted on its web site.  (Doc. No. 52, Ex. 4-15.)  Plaintiffs contend that these

web pages demonstrate that: 1) Aetna owns and controls the <u>www.aetna.com</u> web site as evidenced

by the appearance of "Aetna, Inc." in the copyright information located at the bottom of the pages

(Doc. No. 52, Ex. 4-5, 8-15); 2) Aetna maintains a "national presence" by providing benefits in "all 50

states"  (Id., Ex. 4); 3) Aetna has employees who have "new business responsibilities for ...

Minnesota", employees who provide "sales support" for Minnesota and employees who are "sales

contacts" for Minnesota (Id., Ex. 5, 6, 7); 4) <u>www.aetna.com</u> promotes the health plans and services

Aetna provides in Minnesota (Id., Ex. 9); 5) <u>www.aetna.com</u> lists three job openings in Minnesota (Id.,

Ex. 10); 6) there are at least 500 primary care doctors in Minneapolis, Minnesota who participate with

Aetna (Id., Ex. 12); and 7) www.aetna.com permits Aetna customers to pay their bill by credit card

while enrolling in Aetna health plans (Id., Ex. 14.)

Aetna disputes that the information contained at the www.aetna.com web site provides a basis

for the Court to exercise general jurisdiction over Aetna.  (Def. Aetna's Resp. Supp. Mot. Dismiss at

2.)  First, Aetna argues that "the only demonstrated link" between Aetna and www.aetna.com is the

appearance of Aetna's name indicating copyright ownership of the web pages.  (Id. at 3.)  Moreover,

Aetna maintains that "just about every, if not every, web-page on" www.aetna.com contains a link to

the web site's "Legal Statement" web page, which indicates that "Aetna," as used in the web pages, "is

the brand name for products and services provided by one or more of the Aetna group of subsidiary

companies."  (Id. at 2-3.)  Therefore, argues Aetna, the services offered at www.aetna.com are not

provided by Defendant Aetna, who is the parent holding company of these subsidiaries  (Id. at 2-3)[3].

## 2.      Discussion

The Court recommends that Aetna's motion to dismiss for lack of personal jurisdiction be

denied as the Court finds that Plaintiffs have established a prima facie case of general personal

jurisdiction over Aetna.

While the plaintiff always carries the burden of proof, a plaintiff need only produce prima facie

evidence of personal jurisdiction over a defendant to survive a motion to dismiss for lack of personal

jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  Digi-Tel Holdings, Inc. v. Proteq

---

[3]Finally, Aetna asks the Court to recognize that in Advantus Capital Management v. Aetna, Inc., (D. Minn Civ. No. 06-cv-2855), the only other case in which it has appeared as a defendant in this District, the Court issued a preliminary injunction without addressing Aetna's affirmative defense that the court lacked personal jurisdiction over Aetna.

Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996); Gould v. P.T. Krakatau Steel, 957 F.2d 573,

575 (8th Cir. 1992), cert. denied, 506 U.S. 908 (1992).  In assessing a plaintiff's evidence, the court

views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the

plaintiff's favor.  Digi-Tel Holdings, Inc., 89 F.3d at 522.  Any "doubt[s] should be resolved in favor of

retention of jurisdiction."  V.H. v. Estate of Birnbaum, 543 N.W.2d 649, 653 (Minn. 1996).  When

considering whether personal jurisdiction exists, the court may consider matters outside the pleadings.

Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998) (citing Land v. Dollar, 330 U.S. 731, 735 n. 4

(1947) (noting that "when a question of the District Court's jurisdiction is raised . . . the court may

inquire by affidavits or otherwise, into the facts as they exist" and "the mode of its determination is left

to the trial court"))[4]

This Court has personal jurisdiction over a foreign defendant if a state court in Minnesota would

also have jurisdiction.  See Digi-Tel Holdings, Inc., 89 F.3d at 522.  Minnesota's reach over foreign

defendants extends to the fullest extent permitted by the United States Constitution.  See Soo Line R.R.

Co. v. Hawker Siddeley Canada, Inc., 950 F.2d 526, 528 (8th Cir. 1991) (citing Rostad v. On-Deck,

Inc., 372 N.W.2d 717, 719 (Minn. 1985) (en banc), cert. denied, 474 U.S. 1006 (1985)).  "[T]he

constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in

the forum State."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (quoting Int'l Shoe Co.

---

[4] "While in some cases it is more appropriate to test jurisdictional facts upon the proof adduced after full discovery, the court may properly address itself to the jurisdictional issue at any earlier stage of the proceedings where the affidavits and other exhibits presented on motion and opposition thereto make the issue ripe for early determination."  Block Industries v. DHJ Industries, Inc., 495 F.2d 256, 259 n.3 (8th Cir. 1974) (citations omitted).

v. Washington, 326 U.S. 310, 316 (1945)).  For the Court to acquire jurisdiction over a non-resident

defendant, the defendant's contacts with Minnesota "must be sufficient to cause the defendant to

'reasonably anticipate being haled into court'" in Minnesota.  Epps v. Stewart Info. Servs. Corp., 327

F.3d 642, 648 (8th Cir. 2003) (quoting World-Wide Volkswagen Corp., 444 U.S. 286, 297 (1980)).

The contacts with Minnesota must be more than "'random,' 'fortuitous,' or 'attenuated.'"  Burger King,

471 U.S. at 475 (citations omitted).

     The Eighth Circuit considers the following factors in determining whether personal jurisdiction is

proper: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with

the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state

in providing a forum for its residents; and (5) the convenience of the parties.  Dakota Indus., Inc. v.

Dakota Sportswear, Inc., 946 F.2d 1384, 1390 (8th Cir. 1991).  The first three factors are the primary

factors, the remaining two are secondary factors.  Id.  The Court looks to all of the contacts in the

aggregate and examines the totality of the circumstances in making its determination.  Northrup King.

Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995.)

     Authority over the person may be conferred through either specific or general personal

jurisdiction.  Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-15 & nn. 8-9

(1984).  Courts do not examine the third primary factor when conducting a general jurisdiction analysis.

Lakin v. Prudential Sec., Inc, 348 F.3d 704, 710-713 (8th Cir. 2003). Instead, to confer general

jurisdiction, federal due process requires that: 1) the nature and quality of the contacts with the forum

state are "continuous and systematic"; and 2) the quantity of contacts with the forum state are

"substantial."  Lakin, 348 F.3d at 708.

Courts apply the test developed in <u>Zippo Manufacturing Co. v. Zippo Dot Com, Inc.</u>, 952 F.

Supp. 1119, 1124 (W.D. Pa. 1997), to determine when a defendant's web site evidences continuous

and systematic contacts with the forum state.  <u>Lakin</u>, 348 F.3d at 712.  The <u>Zippo</u> test provides:

> At one end of the spectrum are situations where a defendant clearly does business over
> the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction
> that involve the knowing and repeated transmission of computer files over the Internet,
> personal jurisdiction is proper. At the opposite end are situations where a defendant has
> simply posted information on an Internet Web site which is accessible to users in foreign
> jurisdictions. A passive Web site that does little more than make information available
> to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.
> The middle ground is occupied by interactive Web sites where a user can exchange
> information with the host computer. In these cases, the exercise of jurisdiction is
> determined by examining the level of interactivity and commercial nature of the
> exchange of information that occurs on the Web site.

<u>Lakin</u>, 348 F.3d at 710 *citing* <u>Zippo</u>, 952 F. Supp. at 1124.  However, a web site's mere commercial

functionality will not, without more, permit a court to determine if the defendant's quantity of contacts

with the forum state are substantial in number.  <u>Id.</u>  Therefore, courts require a showing, separate from

the web site's commercial functionality, that the defendant has a substantial number of contacts with the

forum state.  <u>Id.</u>

The Court finds that Plaintiffs have established a prima facie case that the Court may exercise

general jurisdiction over Aetna because: 1) the commercial functionality of the <u>www.aetna.com</u> web

site, Aetna's extensive contacts with Minnesota health care providers, and Aetna's promotion of health

plans and services throughout Minnesota establish a prima facie case that the nature and quality of

Aetna's contacts with Minnesota are systematic and continuous; and 2) the number of Minnesota health

care providers who participate with Aetna and the extent of its promotion of health plans and services

throughout Minnesota constitute a prima facie case that Aetna's contacts with Minnesota are substantial

in number.

As an initial matter, the Court finds that Aetna has blurred the distinction between itself and its

subsidiaries on www.aetna.com because the web site uses "Aetna" to refer to Defendant Aetna, Inc.,

to describe Aetna, Inc.'s subsidiaries and to describe its brand.  On the page entitled "Business

Profile," under the heading "Aetna, Inc.," the web site notes, "Aetna (NYSE: AET) is one of the

nation's leaders in health care, dental, pharmacy, group life, disability and long term care insurance and

employee benefits." (Doc. No. 52, Ex. 4.)  Finally, the web page containing the "Legal Statement" also

displays Aetna, Inc.'s registered trademark in the upper left corner, thereby reenforcing the

interpretation that "Aetna," as used on www.aetna.com, refers to Aetna, Inc., as well as its subsidiaries.

(Doc. 52, Ex. 17.)

Turning to the nature and quality of Aetna's contacts with Minnesota, the Court finds that

Plaintiffs have established a prima facie case that Aetna's contacts are continuous and systematic

because Plaintiffs have made a prima facie case that: 1) the commercial functionality of the

www.aetna.com web site satisfies the middle ground of the Zippo test; and 2) Aetna actively maintains

commercial relationships with Minnesota health care providers and actively promotes health plans and

services throughout Minnesota.  As set forth in Lakin,

> The middle ground is occupied by interactive Web sites where a user can
> exchange information with the host computer. In these cases, the exercise of
> jurisdiction is determined by examining the level of interactivity and commercial
> nature of the exchange of information that occurs on the Web site.

Lakin, 348 F.3d at 710.  The www.aetna.com web site apparently exhibits a high level of interactivity

that is commercial in nature because it ostensibly: permits users to download claim forms, enables users

to discover, and apply for, jobs online, encourages members to log in to view the status of their claims, and empowers customers to pay bills online when enrolling in health plans.

Apart from the systematic and continuous contacts Aetna maintains with Minnesota through its web site, Aetna also has commercial relationships with hundreds of primary care physicians in Minneapolis, Minnesota who have contracted with Aetna to provide health care services.  Moreover, Aetna actively promotes its health plans and services throughout Minnesota.

In addition, the scale of Aetna's interactions with Minnesota health care providers is substantial. The list of primary care doctors on its web site ends with those whose last name begins with the letter "G".  In addition, the list only includes primary care doctors.  Aetna's search functionality permits searches for specialists, behavioral health providers, natural alternatives providers, and dentists. Therefore, the list supports the inference that it probably represents a fraction of the total number of health care professionals in Minneapolis, let alone Minnesota, who have contracted to provide services for Aetna.  Moreover, the list of pharmacies that are apparently members of Aetna's Medicare Rx Plan network totals nineteen pages.  These lists together constitute a prima facie case that Aetna has a substantial number of contacts with health care providers in Minnesota.

Finally, Aetna's citation to Kling is unavailing.  2004 U.S. Dist. LEXIS 21045 at *5-6.  First, Kling addressed a parent company that had no direct contacts with the state of Minnesota, unlike Aetna which has direct contacts with Minnesota as evidenced in its web site.  Id. at *6.  In addition, Kling acknowledges that a defendant's status as a holding company does not provide an absolute bar to personal jurisdiction where "a close interconnection exists between the parent and subsidiary, such as the consolidation of corporate image and operations".  Kling, 2004 U.S. Dist. LEXIS 21045 at *5-

23

6.  Here, as discussed above, Plaintiffs have made a prima facie case that Aetna has consolidated its image with that of its subsidiaries.  Moreover, Aetna has apparently engaged in marketing operations on behalf of itself and its subsidiaries through the use of its web site.

### B.  Sufficiency of Service

Aetna further contends that the Court should dismiss Plaintiffs' suit against it under Federal Rules of Civil Procedure 12(b)(4) and Rule 12(b)(5) because Plaintiffs served Aetna with a faulty summons.  Aetna maintains that, under Federal Rule of Civil Procedure 4(a) ("Rule 4(a)"), a summons must, "identify the court and the parties."  (Def. Aetna's Mem. Supp. Mot. Dismiss at 7-8.)  Because Plaintiffs' summons only listed VData, and not VCode, as a plaintiff, Aetna argues the summons was flawed and the service insufficient.  (Id.)

Plaintiffs contend that any defect in service was "a technical violation of Rule 4" and does not form the basis for dismissal because it did not cause Aetna prejudice.  (Pls.' Resp. Opp. Def. Aetna's Mot. Dismiss at 7 *citing* FDIC v. Swagger, 773 F. Supp. 1244, 1249 (D. Minn. 1991).)  Plaintiffs argue that they served their Amended Complaint along with the defective summons and that the Amended Complaint "clearly identifies" VCode as a Plaintiff.  If the Court finds that the error caused Aetna prejudice, Plaintiffs request that the Court exercise its discretion and quash service but retain the case.  (Id.)

The Court recommends that Defendant's motion to dismiss for improper service and insufficiency of process be denied because Plaintiffs' service error was technical and did not cause Aetna prejudice.  In the face of a technical violation of Rule 4(a), "dismissal is not appropriate unless the party has been prejudiced.  Rule 4, Fed. R. Civ. P., is a flexible rule that should be liberally

24

construed so long as a party receives sufficient notice of the complaint." Andersen Windows, Inc. v.

Delmarva Sash & Door Co. No. CV-02-74, 2002 U.S. Dist. LEXIS 12008, at *9 (D. Minn. June 28,

2002) (internal citations omitted).  Whereas in Anderson, the Plaintiffs served an additional summons to

correct their original defective summons, the Plaintiffs in this case served their Amended Complaint with

the defective summons and the Amended Complaint clearly stated that VCode was an additional

plaintiff.  Aetna has not alleged that it could not determine that VCode was a party to the dispute or that

the error has caused it prejudice.

### C.      Aetna's 12(b)(6) Motion - Infringement and Collateral Estoppel

Aetna urges the Court to dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the

Federal Rules of Civil Procedure alleging that: 1) it fails to state a plausible infringement claim against

Aetna as Plaintiffs have sued the wrong party; and 2) Plaintiffs' claims are barred by the doctrine of

collateral estoppel.  The Court recommends that Aetna's motion be denied.

### 1.      Plaintiffs Have Sufficiently Pled a Claim of Infringement

Aetna contends that the Court should dismiss Plaintiffs' claim of infringement on the grounds

that Plaintiffs have failed to sue the real party in interest, Source One Direct, Inc. ("Source One") with

whom Aetna contracts to manufacture plastic and paper identification cards.  (Def. Aetna's Resp.

Supp. Mot. Dismiss at 6-7, 9-10.)

Aetna argues that the mailing attached as Exhibit C to Plaintiffs' Complaint is insufficient

evidence to support a claim of infringement under §271(a) because, even if the envelope bears Aetna's

name and an allegedly infringing 2D barcode, there is no proof that the envelope was mailed, or if

mailed, that it was mailed by Aetna.  (Def. Aetna's Mem. Supp. Mot. Dismiss at 10.)  Morever, Aetna

alleges that Source One, and not Aetna, affixed the 2D barcode at issue in this case to Exhibit C. (Id. at

10-11.)  In addition, Aetna disputes that its relationship with Source One can be accurately analogized

to Pelligrini v. Analog Devices, Inc., 375 F.3d 1113, 1118 (Fed. Cir. 2004), which it contends "dealt

with a situation in which a company employs an agent or contractor to *manufacture infringing*

*articles on its behalf*."  (emphasis in original) (Def. Aetna's Resp. Supp. Mot. Dismiss at 6.)[5].

Aetna further argues that Plaintiffs fail to state a claim for inducing infringement under 35 U.S.C.

§ 271(b) because 35 U.S.C. § 271(b) requires proof of "*actual intent to cause the acts which*

*constitute the infringement*," and Plaintiffs have failed to plead any such intent.  (emphasis in original)

(Def. Aetna's Resp. Supp. Mot. Dismiss at 7.)

Plaintiffs respond that their Amended Complaint states a valid claim against Aetna because: 1) it

pleads sufficient information to satisfy the criteria established by the Federal Circuit in Phonometics, Inc.

v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000) for an infringement claim to

---

[5]In support of its motion to dismiss, Aetna has submitted copies of: Mr. Kenneth Hewitt's letter
of January 30, 2006 to ACACIA Technologies Group (Doc. No. 38, Ex. C), Mr. Hewitt's letter of
February 28, 2006 to ACACIA Technologies Group (Id., Ex. D), International Data Matrix's
summary judgment motions filed in Veritec v. International Data Matrix Inc., (M.D. Fla. Civ. No. 92-
1170-CIV-T23B) ("Veritec I"), which respectively allege unenforceablity and invalidity of the'078
patent as grounds for summary judgment (Id. 38, Ex. E-F), Judge Steven D. Merryday's order
dismissing the Veritec I case (Id., Ex. G), a Vericode Identification Systems brochure (Id., Ex. H), a
*Newsweek* magazine article of April 21, 1986 entitled "Cracking Down on Counterfeits" (Id., Ex. I),
an *Automatic I.D. News* article entitled, "When bar coding can't fit the real estate" (Id., Ex. J), a copy
of the October 1986 article "Technologies for Secure Environments" (Id., Ex. K), a copy of the
"Master Professional Services Agreement between Aetna Life Insurance Company and Source One
Direct, Inc." (Doc. No. 68-2), and a copy of "Schedule No. 1 to the Master Professional Services
Agreement between Aetna Life Insurance Company and Source One Direct, Inc." (Doc. No. 68-3.)
The Court cannot and will not consider such evidence outside the record on a motion to dismiss under
Rule 12(b)(6).

withstand a Rule 12(b)(6) motion to dismiss; 2) Aetna's claims regarding Source One are based on evidence contained outside the pleadings and therefore not properly before the Court in its consideration of this motion; and 3) Aetna is a proper Defendant irrespective of Source One's possible infringement.

The Court finds that Plaintiffs' Amended Complaint satisfies the criteria established by the Eighth Circuit for surviving a Rule 12(b)(6) motion to dismiss in that it alleges facts, which if proven true, support a finding of infringement.  The Eighth Circuit has held that "[a] complaint should not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Mattes v. ABC Plastics, Inc.</u>, 323 F.3d 695, 698 (2003) *citing* <u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  When making this determination, courts "accept[] as true all factual allegations in the complaint, but giv[e] no effect to conclusory allegations of law."  <u>Id</u>. *citing* <u>Parkhill v. Minn. Mut. Life Ins. Co.</u>, 286 F.3d 1051, 1058 (8th Cir. 2002) (well-pleaded facts, not legal theories or conclusions, determine adequacy of complaint).

Plaintiffs' Amended Complaint states valid claims under these criteria when it alleges:

> 14.  Defendants manufacture, make, have made, use, sell, and/or offer for sale articles and/or services that infringe claims in the '524 patent and the '078 patent.  In ... having made, using, selling such devices and/or services, Defendants are infringing directly, by inducement, and/or by contributing to the infringement of the '524 parent and '078 patent.  Specifically, Defendants are applying and using symbols taught by the claims in the '524 patent and the '078 patent on their respective articles.  (See Exhibits C, D, E, and F which are attached and made part of this Complaint.)

Rule 12(b)(6) requires that the Court accept as true Plaintiffs' allegation that Aetna applied and used the 2D barcode in making Exhibit C and/or that Aetna mailed the envelope with an infringing bar code. The facts alleged in the Amended Complaint, therefore, are sufficient to plead a claim that Aetna

infringed the '524 and '078 patents.  If these facts prove to be incorrect, Aetna is free to move for summary judgment at the conclusion of discovery in this case.

### 2.      Plaintiffs' Claims Are Not Barred by Collateral Estoppel

Finally, Aetna argues that the Court should dismiss Plaintiffs' action against it because Plaintiffs are barred under the doctrine of collateral estoppel from alleging the validity and enforceability of the '524 and '078 patents.

First, according to Aetna, the dismissal order in <u>Veritec I</u> bars Plaintiffs from asserting the validity and enforceability of the '078 patent.  (Def. Aetna's Mem. Supp. Mot. Dismiss at 21-23.) Moreover, Aetna asserts that the estoppel extends to the '524 patent because an unenforceability finding extends to all patents that, like the '078 and '524 patent, have "an immediate and necessary relationship."  (Def. Aetna's Resp. Supp. Mot. Dismiss at 9.)

Plaintiffs argue that the <u>Veritec I</u> litigation does not collaterally estop their suit against Aetna because the <u>Veritec I</u> court never adjudicated the validity of the '078 patent and did not address the '524 patent.  (Pls.' Resp. Opp. Def. Atena's Mot. Dismiss at 20-21.)  In support, Plaintiffs contend that the doctrine of collateral estoppel applies only when the "determination of the issue was essential to a valid and final judgment." (<u>Id.</u> at 19 *citing* <u>Popp Telecom v. Am. Sharecom, Inc.</u>, 210 F.3d 928, 939 (8th Cir. 2000).)  As no responses and no replies to the <u>Veritec I</u> summary judgment motions were ever filed and the <u>Veritec I</u> court never ruled on the motions, Plaintiffs maintain that the <u>Veritec I</u> dismissal has no collateral estoppel effect in this case. (<u>Id.</u> at 18-19.)

The Court recommends that Aetna's motion to dismiss on the grounds of collateral estoppel be denied as the <u>Veritec I</u> case lacks preclusive effect with respect to the current litigation.  The <u>Veritec I</u>

court entered a stipulated dismissal of the case following a settlement of the case and not a stipulated

judgment.  The issues of the '078 patent's validity and enforceability were never adjudicated by the

Veritec I court and hence, there was no valid or final judgment on the issue of the validity of the '078

patent in that case.

### D.      Source One Is Not A Necessary Party

Aetna moves in the alternative to join Source One as a necessary and indispensable party under

Federal Rule of Civil Procedure 19(a).  (Def. Aetna's Mem. Supp. Mot. Dismiss at 11-12.)  Rule

19(a) reads, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the
> court of jurisdiction over the subject matter of the action shall be joined as a party in the
> action if (1) in the person's absence complete relief cannot be accorded among those
> already parties, or (2) the person claims an interest relating to the subject of the action
> and is so situated that the disposition of the action in the person's absence may (i) as a
> practical matter impair or impede the person's ability to protect that interest or (ii) leave
> any of the persons already parties subject to a substantial risk of incurring double,
> multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Aetna maintains that Source One meets the criteria for joinder as a necessary party under Rule

19(a), because: 1) "it conducted the allegedly infringing acts"; 2) any judgment against Aetna would

have a preclusive effect against Source One; and 3) "any judgment would be inadequate without

Source One, as Aetna, Inc. is powerless to prevent Source One from continuing its infringement of the

'078 and '524 patents".  (Id. at 11-12.)

Plaintiffs contend that Aetna's motion should be denied because complete relief can accorded

among the current parties and Aetna is free to implead Source One under Federal Rule of Civil

Procedure 14 if it wishes to bring Source One into the suit on a theory of indemnity or contribution.

(Id. at 10-15.)

The Court likewise recommends that Aetna's motion to join Source One as a necessary and indispensable party under Federal Rule of Civil Procedure 19(a) be denied because complete relief can be accorded between Plaintiffs and Aetna without Source One's involvement and Source One's ability to protect its interests will not be impeded by its non-participation in this lawsuit. Aetna is always free to implead Source One into this case.

### IV.    AETNA'S MOTION FOR SANCTIONS

Aetna urges the Court to impose Federal Rule of Civil Procedure Rule 11(c) ("Rule 11") sanctions on Plaintiffs because: 1) Plaintiffs have "failed to conduct a reasonable pre-filing investigation and establish a plausible infringement theory" before filing this suit; and 2) Plaintiffs are attempting to enforce patents that they know are invalid and unenforceable as a result of their involvement with the Veritec I litigation and the PTO reexamination process.  (Def. Aetna's Mem. Supp. Mot. Sanctions at 4 citing Q-Pharma, Inc. v. Andrew Jergens Co. 360 F.3d 1295 (2004))

Plaintiffs respond that sanctions are not appropriate because: 1) Aetna's motion is premature; 2) Plaintiffs have stated valid claims against Aetna for direct infringement and inducing infringement; and 3) the '524 and '078 patents are valid and enforceable.  (Pls.' Resp. Opp. Def. Aetna's Mot. Sanctions at 2-7, 8, 12.)  Plaintiffs acknowledge that Aetna properly served notice of its intention to file this motion on August 4, 2006 and dispute Aetna's claims on the merits.  (Id. at 2.)

The Court recommends that Aetna's motion for sanctions be denied.  First, the Court has found that Plaintiffs' claims survive Aetna's Rule 12(b)(6) motion to dismiss.  In addition, no court has adjudicated, nor has the PTO determined, that the '524 and '078 are either invalid or unenforceable.

30

Therefore, Plaintiffs have engaged in no improper conduct, let alone conduct sanctionable under Rule 11.

## V.      Plaintiffs' Motions to Strike

As Plaintiffs protest Aetna's submission of evidence outside the pleadings in support of its 12(b)(6) motion, Plaintiffs have submitted motions to strike Exhibits C - K to the affidavit of Will Stute in Support of Aetna's Motion to Dismiss (Doc. No. 38, Ex. C-K), as well as Exhibits A and B to the affidavit of Will Stute, submitted in conjunction with the reply brief in support of the same motion (Doc No. 68, Ex.1-2).  As the Court has excluded these exhibits from consideration in its examination of the Aetna's 12(b)(6) motion, the Court will deny these motions as moot.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1.      Merchant's Motion to Stay Litigation Pending Reexamination Proceedings (Doc. No. 22) be **GRANTED**;

2.      Aetna's Motion to Dismiss (Doc. No. 42) be **DENIED**;

3.      Aetna's Motion for Sanctions (Doc. No. 55) be **DENIED**;

4.      Plaintiff's Motion to Strike Exhibits (Doc. No. 59) be **DENIED as MOOT**;

5.      Plaintiff's Motion to Strike Exhibits (Doc. No. 71) be **DENIED as MOOT**.


Dated: October 31, 2006

_____s/ Susan Richard Nelson_____

SUSAN RICHARD NELSON
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by **November 14, 2006** after being served with a copy thereof.  The objecting party must file with the Clerk of the Court and serve on all parties, written objections which specifically identify the portions of the proposed findings, recommendations, or report to which objection is being made, and a brief in support thereof.  A party may respond to the objecting party's brief within ten days after service thereof.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.